714

G. Whitney Saidla & a.

v.

Stratham Planning Board & a.

August 31, 1983

*Holland, Donovan, Beckett & Welch,* of Exeter (*Robert B. Donovan* on the brief and orally), for the plaintiffs.

*Casassa, Mulherrin & Ryan,* of Hampton (*John J. Ryan* on the brief and orally), for the defendants John B. Dabney and David Forman.

PER CURIAM.   This appeal from superior court presents the issue whether a Master (*Charles T. Gallagher,* Esq.) correctly ruled that the plaintiffs had a right under a Town of Stratham subdivision regulation to prevent the defendant Stratham Planning Board from approving a cluster housing development on adjacent property. We reverse.

The plaintiffs, G. Whitney Saidla and Pamela Saidla, own an eight-acre parcel of land in Stratham next to a seventy-acre tract owned by the defendants John B. Dabney and David Forman. In 1978, the then-owners of both tracts, William Leahy, Jr., and Margaret Leahy, discussed with Maurice Murphy, Dabney and Forman's predecessor in title, the sale to Murphy of the entire property. At that time, Murphy was also negotiating with the plaintiffs to sell them a house, barn, and office building which then existed on the property and a small amount of land around these buildings. The plaintiffs and Murphy executed a written agreement which provided that Murphy would convey the buildings and eight acres to the plaintiffs when he acquired title from the Leahys.

Murphy intended to use the remaining property for residential development. Prior to the Leahys' conveyance of the property to him, Murphy applied for and received the approval of the Stratham Planning Board to subdivide the property into the eight-acre parcel to be conveyed to the plaintiffs and the remaining tract to be retained by him (Leahy-Murphy plan). The Leahys subsequently conveyed the property to Murphy, who, as agreed, sold the eight-acre parcel to the plaintiffs.

In 1979 and 1980, Murphy received planning board approval of two six-lot subdivisions on a portion of the seventy-acre tract he had retained. Despite attempts to market those lots for construction of single-family homes, Murphy was unable to sell any of the lots, and the roadways and facilities planned for the proposed subdivisions were never constructed.

In March 1981, the Stratham Town Meeting enacted new subdivision regulations permitting clustered multi-family housing in areas where previously only single-family housing had been allowed. Authority to approve a proposed cluster development was vested in the town planning board. *See* RSA 31:61-a, III (Supp. 1981). The newly approved cluster development regulations included the following provision:

> "There shall be no change in the use of any land previously approved by the Planning Board; that is, prior to Town Meeting of March, 1981, for single family residences or *previous subdivisions approved prior to Town Meeting, March 1981,* to permit cluster development . . . .
>
> The only method by which a waiver will be permitted or authorized herein is when every present landowner of every lot in any present subdivision or portion of a subdivision herein already approved, signs a document in writing in a form approved by the Planning Board and Town Counsel which indicates that every land owner in the entire subdivision desires to enter into the cluster development."

(Emphasis added.)

Two individuals who were members of the Stratham Planning Board at the time the foregoing waiver provision was enacted, and who were instrumental in its drafting, testified before the master that the provision was intended to apply to single-family subdivisions then under construction in the town. The planning board members stated that the purpose of the restriction was to prevent the developers of these subdivisions from changing the single-family subdivisions to cluster housing unless all of the property owners within the subdivisions signed waivers agreeing to the change to multi-family housing.

After the enactment of the new cluster development regulations, the defendants Dabney and Forman entered into agreements with Murphy to acquire the seventy-acre tract. They then applied to the Stratham Planning Board for approval to build cluster housing on the property, and the board approved the Dabney-Forman subdivision plan in July 1981.

The plaintiffs appealed the planning board's decision to superior court pursuant to RSA 36:34, I (Supp. 1981), alleging numerous procedural and substantive errors. After a hearing, the master recommended that the planning board's approval be vacated and the case remanded to the board for reconsideration in compliance with certain statutory procedural requirements. The Superior Court (*Nadeau,* J.) approved the master's recommendations, retaining jurisdiction of the case so that the alleged substantive errors committed by the planning board could be reviewed later.

On remand, the planning board reaffirmed its approval of the Dabney-Forman subdivision plan after curing the procedural defects in its initial proceedings. The plaintiffs again appealed to the superior court, claiming that the board erred as a matter of law in not applying the waiver provision of the recently-enacted cluster development regulations to the Dabney-Forman subdivision, because the plaintiffs' property is part of a subdivision previously approved by the planning board. The defendants argued that the Leahy-Murphy subdivision plan did not propose a use of the property for which planning board approval was required, and that the first subdivision proposals seeking such a new use were the two Murphy plans to develop six single-family lots each. Because the plaintiffs do not own any property in a subdivision in which "the use of any land [was] previously approved by the [p]lanning [b]oard," the defendants asserted that the plaintiffs were not entitled to the benefit of the waiver restriction.

Contrary to the defendants' argument, the master found that the Leahy-Murphy subdivision was a "previous subdivision approved prior to . . . Town Meeting, March, 1981" within the meaning of the cluster development provision quoted above, and that the waiver restriction applied. Therefore, the master ruled that the absence of the plaintiffs' consent precluded the planning board's approval of the Dabney-Forman cluster development plan. The Superior Court (*Contas,* J.) approved the master's recommendation to vacate the planning board's approval of the subdivision plan and entered a decree accordingly.

Our decision in *Trottier v. City of Lebanon,* 117 N.H. 148, 370 A.2d 275 (1977), sets forth the rules of law that govern in this case. We stated that the construction of an ambiguous provision of a zoning ordinance is a question of law, and that the "proper inquiry is the ascertainment of the intent of the enacting body." *Id.* at 150, 370 A.2d at 276–77; *see Spicer v. Claremont,* 104 N.H. 461, 463, 189 A.2d 496, 498 (1963).

■ In this case, there was testimony from two of the planning board members who drafted the waiver restriction that this provision was intended to apply only to single-family subdivisions under construction in the town when the cluster development regulations were enacted in March 1981, and not to *every* subdivision *ever* approved by the planning board before that date. One of the planning board members stated specifically that the Leahy-Murphy subdivision plan was not envisioned when the waiver restriction was drafted. The interpretation of the waiver provision urged by the plaintiffs would produce an unreasonable result. It would require the owner of a portion of a parcel of land that had previously been part of a larger tract approved by the planning board prior to March 1981, to consent to the construction of multi-family housing. This would be so even though the parcel was not part of the land as to which the subdivision use was being changed.

The plaintiffs rely upon the definition of "subdivision" in the town's subdivision regulations, as it existed at the time the cluster development provisions were enacted, to support their position that their property is within a subdivision to which the waiver provision applies. That definition provides in relevant part:

> "'Subdivision' means the division of a lot, tract, or parcel of land into two or more lots, plats, sites, or other division of land for the purpose, whether immediate or future, of sale or of building development. It includes resubdivision and, when appropriate to the context, relates to the process of subdividing or to the land or territory subdivided."

The plaintiffs argue that a more restrictive reading of the word "subdivision" within the waiver provision would contravene the ordinance's definition. They cite our statement in *Trottier* that "[w]here the ordinance defines the term in issue, that definition will govern." 117 N.H. at 150, 370 A.2d at 277.

The master did not cite the ordinance's definition of "subdivision" to support his finding that the plaintiffs' property is part of a "previous subdivision" to which the waiver restriction applies; rather, he appears to have based his finding on the phrase "previous subdivision." Even if he had relied upon the ordinance's definition of "subdivision," however, we do not believe that the definition would have been dispositive of the issue in this case.

■ The waiver restriction is applicable only to changes "in the *use* of any land previously approved" by the planning board. (Emphasis added.) The Leahy-Murphy subdivision, of which the plaintiffs' property is a part, although technically requiring plan-

ning board approval, clearly did not contemplate any new *use* for which board approval was necessary, since the buildings then existing on the eight-acre parcel could have been occupied without planning board permission. Murphy did not seek planning board approval for the use of his property for the development of single-family-home subdivisions until later.

The Leahy-Murphy subdivision plan was created merely to facilitate the conveyance of separate tracts, and the plaintiffs' property was not part of a subdivision involving a change in a use previously approved by the planning board. We hold that the master erred in ruling that the waiver restriction was applicable to the plaintiffs and that the planning board was barred from considering the Dabney-Forman subdivision plan absent the plaintiffs' consent.

The plaintiffs' attempt to bring themselves within the purview of the waiver provision, based upon certain representations to them by Murphy, or by the terms of their purchase-and-sale agreement with Murphy, is unavailing. The only relevant inquiry in this case is whether, under the terms of the cluster development regulations, the Leahy-Murphy plan vested the right of consent in the plaintiffs. Any representations made by Murphy to the plaintiffs are irrelevant.

*Reversed and remanded.*